FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 05, 2017

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MINDY MERRILL, | No. 1:16-cv-03072-MKD |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | ECF Nos. 17, 21 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 17, 21. The parties consented to proceed before a magistrate judge. ECF No. 5. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court grants Plaintiff's motion (ECF No. 17), in part, and denies Defendant's motion (ECF No. 21).

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

# STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do [her] previous work[,] but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

1    If the claimant is not engaged in substantial gainful activity, the analysis

2    proceeds to step two.  At this step, the Commissioner considers the severity of the

3    claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers

4    from "any impairment or combination of impairments which significantly limits

5    [her] physical or mental ability to do basic work activities," the analysis proceeds

6    to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment does not

7    satisfy this severity threshold, however, the Commissioner must find that the

8    claimant is not disabled.  20 C.F.R. § 404.1520(c).

9    At step three, the Commissioner compares the claimant's impairment to

10   severe impairments recognized by the Commissioner to be so severe as to preclude

11   a person from engaging in substantial gainful activity.  20 C.F.R. §

12   404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the

13   enumerated impairments, the Commissioner must find the claimant disabled and

14   award benefits.  20 C.F.R. § 404.1520(d).

15   If the severity of the claimant's impairment does not meet or exceed the

16   severity of the enumerated impairments, the Commissioner must pause to assess

17   the claimant's "residual functional capacity."  Residual functional capacity (RFC),

18   defined generally as the claimant's ability to perform physical and mental work

19   activities on a sustained basis despite her limitations, 20 C.F.R. § 404.1545(a)(1),

20   is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*,

1  700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for Title II disability insurance benefits on December 1, 2014,[1] alleging a disability onset date of June 25, 2013.  Tr. 202-03.  The application was denied initially, Tr. 128-30, and on reconsideration, Tr. 139-44.  Plaintiff appeared at a hearing before an Administrative Law Judge (ALJ) on November 2, 2015.  Tr. 38-82.  On December 7, 2015, the ALJ denied Plaintiff's claim.  Tr. 22-32.

At step one, the ALJ found that Plaintiff has engaged in substantial gainful activity from June 25, 2013 through September 26, 2014; however, the ALJ determined that there has been a continuous twelve month period during which Plaintiff has not engaged in substantial gainful activity and continued the sequential evaluation.  Tr. 24.  At step two, the ALJ found Plaintiff has the following severe impairments: posttraumatic stress disorder (PTSD), anxiety disorder, depressive disorder, substance abuse in full remission, right shoulder degenerative joint disease, cervical degenerative disc disease, and obesity.  *Id*.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment.

_____

[1] Plaintiff's protective filing date was November 25, 2014.  Tr. 96, 110-11.

Tr. 25. The ALJ then concluded that Plaintiff has the RFC to perform light work,

with the following limitations:

> the claimant is capable of performing mental tasks at a level
> equivalent to that required of SVP 3 level jobs. The claimant can
> have incidental contact with the public and is capable of working in
> proximity to but not in coordination with coworkers. She can have
> occasional contact with supervisors. The dominant right upper
> extremity frequently engages in reaching, handling, fingering, and
> feeling. The right arm does not engage in overhead reaching. She is
> capable of maintaining production levels at 10% below normal and
> average production requirements. She would be absent from work 10
> times per year. She can have occasional stooping, squatting,
> crouching, crawling, kneeling, and climbing stairs and ramps. She
> cannot climb ladders, ropes, and scaffolds.

Tr. 27. At step four, the ALJ found that Plaintiff is unable to perform relevant past

work. Tr. 30. The ALJ found at step five that there are other jobs that exists in

significant numbers in the national economy that Plaintiff could perform within her

assessed RFC, such as an office helper and marking clerk. Tr. 31. On that basis,

the ALJ concluded that Plaintiff was not disabled as defined in the Social Security

Act during the adjudicative period, June 25, 2013 to December 7, 2015. Tr. 31-32.

On March 14, 2016, the Appeals Council denied review, Tr. 1-4, making the

Commissioner's decision final for purposes of judicial review. *See* 42 U.S.C.

405(g); 20 C.F.R. § 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

her disability insurance benefits under Title II of the Social Security Act.  ECF No. 17.  Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly weighed the medical opinion evidence; and

2. Whether the ALJ properly discredited Plaintiff's symptom claims.

ECF No. 17 at 1.

## DISCUSSION

### A.  Medical Opinion Evidence

Plaintiff faults the ALJ for discounting the medical opinions of William Wilkinson, Ed.D., Cara Alexander, M.D., Kathryn Holgate, LMHC, and Jesus Nacanaynay.  ECF No. 17 at 15-20.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of

nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin,* 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (*citing Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

*1. William Wilkinson, Ed.D.*

On April 9, 2015, Dr. Wilkinson completed a Psychological/Psychiatric Evaluation form for the Washington State Department of Social and Health Services. Tr. 391-99. He diagnosed Plaintiff with PTSD; depressive disorder, and poly substance dependence in late sustained full remission. Tr. 393. He opined

that Plaintiff had a marked[2] limitation in the abilities to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision, complete a normal work day and work week without interruptions from psychologically based symptoms, and maintain appropriate behavior in a work setting.  Tr. 393-94.  Dr. Wilkinson opined that Plaintiff had a moderate[3] limitation in six additional basic work activities.  *Id*.  He opined that these limitations would be present for nine to twelve months with available treatment.  Tr. 394.  The ALJ gave some weight to Dr. Wilkinson's moderate limitations but only little weight to the marked limitations because (1) Plaintiff was able to maintain appropriate behavior with treatment providers and others and (2) Plaintiff would have no more than 10% reduced productivity and 10 absences a year.  Tr. 29-30.

Both of the reasons provided by the ALJ fail to meet the specific and

---

[2] A marked limitation is defined as "a very significant limitation on the ability to perform on or more basic work activity."  Tr. 393.

[3] A moderate limitation is defined as "there are significant limits on the ability to perform one or more basic work activity."  Tr. 393.

legitimate standard.[4]  The specific and legitimate standard can be met by the ALJ

setting out a detailed and thorough summary of the facts and conflicting clinical

evidence, stating his interpretation thereof, and making findings.  *Magallanes v.*

*Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  The ALJ is required to do more than

offer his conclusions, he "must set forth his interpretations and explain why they,

rather than the doctors', are correct."  *Embrey v. Bowen*, 849 F.2d 418, 421-422

(9th Cir. 1988).  In this case, both reasons the ALJ provided were conclusory and

lacked a single citation to the record to support the determination.  The ALJ

provided no citation to the record or reference to any evidence that supported his

assertion that Plaintiff was able to maintain appropriate behavior with treatment

providers and others.  Tr. 29-30.  Additionally, the ALJ's determination that

Plaintiff would have no more than 10% reduced productivity and 10 absences a

year is a finding addressed in the RFC assessment and not the opinion of another

provider.  Tr. 27.  The practice of rejecting a provider's opinion because it is

_____

[4] Neither party asserts whether Dr. Wilkinson's opinion is contradicted, thus failing

to allege which of the two standards apply to the opinion.  ECF Nos. 17, 21.

However, seeing that neither reason meets the lessor standard of specific and

legitimate, it is not necessary for this Court to make a finding as to which standard

applies.

inconsistent with the RFC determination is illogical as the RFC determination is supposed to be based on an evaluation of the evidence, including medical source opinions. *See* 20 C.F.R. §§ 404.1520(e); 404.1545(a)(3) (The RFC is based on all the relevant medical and other evidence in the case record.). Therefore, these reasons are insufficient under *Embrey*.

Defendant asserts that the ALJ provided a third reason, that Dr. Wilkinson's reports were inconsistent. ECF No. 21 at 10 (*citing* Tr. 28). However, the paragraph of the ALJ's decision Defendant cites is actually a portion of the ALJ's credibility determination and specifically a finding that Plaintiff's medical records failed to support her reported symptoms. Tr. 28. In addressing Dr. Wilkinson's opinion, the ALJ does not address any inconsistency in the medical records, internally or otherwise. Tr. 29-30. As such, Defendant's assertion is a *post hoc* rationalization, which will not be considered by this Court. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.").

Considering the ALJ provided conclusory reasons for rejecting Dr. Wilkinson's marked limitations that fail to meet the specific and legitimate standard, the case is remanded for additional proceedings to allow the ALJ to properly address the opinion.

### 2. Cara Alexander, M.D.

On March 12, 2015, Dr. Alexander completed a Psychiatrist Evaluation of Plaintiff. Tr. 376-80. Dr. Alexander diagnosed Plaintiff with PTSD, major depressive disorder, and borderline traits. Tr. 379. Dr. Alexander stated the following:

> These diagnoses are currently severe and are significantly interfering with her ability to work. Specifically in the areas of organization, concentration, motivation, self-care, and interpersonal skills, she shows impairment. She reported this in the history. I also saw this on exam by her intense and guarded interpersonal style (which later calmed significantly when we developed an alliance). On her cognitive exam, she showed poor concentration in spelling WORLD backward. Serial 7s were also slightly incorrect. I think this shows poor concentration since the first 3 answers were correct. She also showed concrete thinking in her interpretation of the proverb. This kind of thinking can make it difficult to interpret people's intentions in interpersonal situations and can lead to worse anxiety. She also reported that she has not been grooming herself or feeding herself well because of her depression. So I imagine that it would be very difficult for her to maintain a job at this time due to the severity of her symptoms.

Tr. 379. Additionally, Dr. Alexander provided the following medical source statement:

> Despite her impairments, the claimant does show good understanding in her ability to follow conversation and 3-step command. She shows good social interaction once she feels safe. She shows good adaptation in the sense that she overcame a serious drug problem and even got a degree in counseling. She showed good memory in her recall of 3 objects. She showed good ability to reason in her judgment test.

Tr. 379. The ALJ gave little weight to this opinion because (1) it was merely

conclusory and without a function by function explanation and (2) it was

inconsistent with the examination.  Tr. 30.

The ALJ's reasons for rejecting Dr. Alexander's opinion are not supported

by substantial evidence.  First, while Dr. Alexander did not complete a RFC

assessment form, she did address several of Plaintiff's abilities on a function by

function basis throughout her opinion, specifically addressing her concentration,

motivation, self-care, and interpersonal skills.  *See* Tr. 379.

Second, the ALJ found that Dr. Alexander's opinion was inconsistent with

her examination, specifically as to Plaintiff's memory and concentration.  Tr. 30.

The ALJ found that the "opinion is not fully consistent with the examination that

showed the claimant with intact recent and remote memory."  Tr. 30.  However,

Dr. Alexander did not opine that Plaintiff's memory was impaired. Dr. Alexander

specifically found that Plaintiff showed "good memory in her recall of 3 objects."

Tr. 379.  Therefore, there was no inconsistency regarding Plaintiff's memory.

Additionally, the ALJ found that Dr. Alexander's opinion regarding

Plaintiff's concentration was inconsistent with the examination results, stating that

upon examination Plaintiff "exhibited good attention and concertation and was

able to follow a three-step command.  The claimant had no difficulty following the

conversation."  Tr. 30.  The ALJ's determination appears to be based on a premise

that Dr. Alexander's opinion overstated Plaintiff's limitations and the medical

evaluation showed a lessor degree of severity. However, the evaluation reports stated that Plaintiff "showed poor concentration in spelling WORLD backward. Serial 7s were also slightly incorrect. I think this shows poor concentration since the first 3 answers were correct." *Id.* Dr. Alexander then opined that Plaintiff "does show good understanding in her ability to follow conversation and 3-step command[s]." *Id.* Therefore, the ALJ's determination is actually the opposite of what the administrative record shows and is not supported by substantial evidence.

Considering the ALJ failed to provide reasons supported by substantial evidence to support his rejection of Dr. Alexander's opinion, this case is to be remanded for additional proceedings to address the opinion. *See Hill*, 698 F.3d at 1158.

### 3. *Jesus Nacanaynay, MA, MHP, and Kathryn Holgate, LMHC*

On April 28, 2015, Mr. Nacanaynay completed a Mental Impairment Questionnaire, Tr. 466-70, and on October 19, 2015, Ms. Holgate completed a similar form. Tr. 573-78. The ALJ rejected the opinions contained on these forms because (1) they were based on a few recent sessions with Plaintiff and (2) they failed to include a narrative section, which is the functional opinion under POMS DI 24510.060. Tr. 29.

Mr. Nacanaynay and Ms. Holgate are not an acceptable medical sources.

*See* 20 C.F.R. § 404.1502[5] (Acceptable medical sources are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists.).  An ALJ is required to consider evidence from non-acceptable medical sources and non-medical sources.  20 C.F.R. § 404.1527(f).[6]  An ALJ must give reasons "germane" to each source in order to discount evidence from non-acceptable medical sources.  *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014).

The ALJ's first reason is sufficient to meet the germane standard.  By Mr. Nacanaynay's April 28, 2015 opinion, he had seen Plaintiff eleven times with the first being on November 20, 2014.  Tr. 367-74, 413-23, 433.  By Ms. Holgate's October 19, 2015 opinion, she had completed Plaintiff's treatment plan dated October 14, 2015.  Tr. 553-56.  Since the treatment was recent and limited to a short period of time, the reason meets the germane standard.  *See* 20 C.F.R. 404.1527(f)(1) (the length of the treatment relationship and the frequency of examination are factors to consider when weighing the opinion of a non-acceptable

---

[5] Prior to March 27, 2017, the definition of an acceptable medical source was located at 20 C.F.R. § 404.1513.

[6] Prior to March 27, 2017, the requirement that an ALJ consider evidence from non-acceptable medical sources was located at 20 C.F.R. § 404.1513(d).

medical source).[7]

The ALJ's second reason does not meet the germane standard. POMS DI 24510.060 sets forth the agency's operating policy on the completion of Form SSA-4734-F4-SUP. However, a comparison of Form SSA-4734-F4-SUP and the forms completed by Mr. Nacanaynay and Ms. Holgate show drastic differences. First, Form SSA-4734-F4-SUP is much shorter, containing only three sections: (1) Summary Conclusions containing twenty functional abilities and boxes to rate the level of impairment ranging from no evidence of limitation to markedly limited (commonly known as a mental RFC); (2) Remarks; and (3) Functional Capacity Assessment.[8] The forms completed by Mr. Nacanaynay and Ms. Holgate contain seventeen questions, only one of which addresses the functional limitations commonly known as a mental RFC. Tr. 466-70, 573-78. Several of these questions pertain to meeting one of the 12.00 listings, including a symptoms list and the "B Criteria". Tr. 467, 469, 574. Additionally, when addressing the functional abilities that are commonly known as the mental RFC, the forms

---

[7] Prior to March 27, 217, this factor was applied to non-acceptable medical sources by S.S.R. 06-03p.

[8] Copy of form located at THOMAS E. BUSH, SOCIAL SECURITY DISABILITY PRACTICE § 245.4 (James Publishing, Inc. 2nd ed., 24th rev., 2017).

completed by Mr. Nacanaynay and Ms. Holgate have definitions for the degrees of limitation, Tr. 467, 574, while Form SSA-4734-F4-SUP does not.  Therefore, the determination that these contrasting forms are sufficiently alike for POMS DI 24510.060 to apply is not supported by substantial evidence.  Additionally, the forms completed by Mr. Nacanaynay and Ms. Holgate have much more opportunity for narrative discussion than does Form SSA-4734-F4-SUP.

Even though the ALJ provided a germane reason for discounting these opinions, the case is being remanded for the ALJ to address other opinions in the record.  Therefore, the ALJ is further instructed to readdress the opinions of Mr. Nacanaynay and Ms. Holgate upon remand.

**B.  Adverse Credibility Finding**

Plaintiff faults the ALJ for failing to provide specific findings with clear and convincing reasons for discrediting her symptom claims.  ECF No. 17 at 7-15.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptom alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show

that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection." *Ghanim*, 763 F.3d at 1163 (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834); *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the

claimant's condition. *Thomas*, 278 F.3d at 958-59.

The ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, he found Plaintiff less than fully credible concerning the intensity, persistent and limiting effects of the reported symptoms. Tr. 27. The ALJ found Plaintiff's symptom reports less than fully credible because (1) the limited treatment for her physical impairments are inconsistent with her reported symptoms, (2) the medical evidence does not support the severity of reported symptoms, (3) her cancellation of mental health appoints is inconsistent with her alleged symptoms, and (4) she held herself out as available for work through the receipt of unemployment benefits. Tr. 28-29.

Considering the case is being remanded for the ALJ to further address medical source opinions, *see supra.*, and the evaluation of a claimant's statements regarding limitations relies in part on the assessment of the medical evidence, *see* 20 C.F.R. § 404.1529(c), the ALJ is further instructed to make a new assessment as to whether Plaintiff's subjective symptom statements are consistent with the record as a whole. *See* S.S.R. 16-3p.

## C. Remand

Plaintiff urges the Court to remand for immediate award of benefits. ECF No. 22 at 1. To do so, the Court must find that the record has been fully developed and further administrative proceedings would not be useful. *Garrison*, 759 F.3d at

1019-20; *Varney v. Sec. of Health and Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988).  But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate.  *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

Here, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated.  Further proceedings are necessary for the ALJ to properly weigh medical opinions in the record and address the credibility of Plaintiff's symptom reports.  The ALJ is instructed to supplement the record with any outstanding evidence and take testimony from a medical and a vocational expert at a remand hearing.

## CONCLUSION

**IT IS ORDERED:**

1. Plaintiff's motion for summary judgment (ECF No. 17) is **GRANTED, in part,** and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this order**.**

2. Defendant's motion for summary judgment (ECF No. 21) is **DENIED.**

3. Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order, enter

**JUDGMENT FOR THE PLAINTIFF**, provide copies to counsel, and **CLOSE**

THE FILE.

DATED September 5, 2017.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE